OPINION
Defendant-appellant Dan R. Harmon (hereinafter "husband") appeals the December 14, 1999 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, approving and adopting the Magistrate's November 1, 1999 Decision which found husband in contempt of court for failure to pay a marital debt to American General Finance. Plaintiff-appellee is Teresa A. DeMattio, fka Harmon (hereinafter "wife").
 STATEMENT OF THE FACTS AND CASE
Husband and wife were married on August 28, 1982, in Midvale, Ohio. One child was born as issue of said union, to wit: Shaunta Marie Harmon (DOB 2/18/83). On November 6, 1996, wife filed a Complaint for Divorce in the Tuscarawas County Court of Common Pleas, Domestic Relations Division. Husband filed an answer on November 21, 1996. The matter came on for a final hearing on the merits before the magistrate on February 4, 1998. At that time, the parties read into the record an oral separation agreement. The magistrate memorialized this agreement via Decision filed April 18, 1998. On May 1, 1998, wife filed objections to the Magistrate's Decision. Wife's objections noted the omission from the Magistrate's Decision of the parties' agreement husband would be solely responsible for a debt owed to American General Finance and he would hold wife completely harmless thereon. The trial court conducted a hearing on the objections on May 18, 1998. Husband did not appear at the hearing, however, Attorney Thomas Watson appeared on his behalf. At the hearing, wife's counsel and Attorney Watson reviewed the transcript of the final merits hearing. Attorney Watson advised the trial court he had no objections to amending the Magistrate's Decision to provide for the additions and omissions as set forth in wife's objections. Via Agreed Entry filed May 28, 1998, the trial court ordered, adjudged, and decreed the Magistrate's April 18, 1998 Decision be amended in accordance with wife's objections. Prior to the February 4, 1998 final merits hearing and the subsequent proceedings, husband filed Chapter 13 bankruptcy, which was ultimately converted to a Chapter 7 bankruptcy. On April 1, 1997, husband was discharged from all obligations, including the American General Finance debt. American General had obtained a judgment against both husband and wife regarding the debt on October 17, 1995. In the summer of 1999, wife received numerous letters from American General Finance, threatening to sue her upon the past due debt. Consequently, on August 19, 1999, wife filed a motion, requesting the trial court find husband in contempt of the Magistrate's April 18, 1998 Decision and the May 28, 1998 Agreed Entry. Specifically, wife requested husband be found in contempt for failing to pay and hold wife harmless on the American General Finance debt. The magistrate conducted a hearing on the motion on October 20, 1999. Based upon the testimony and the exhibits presented, the magistrate recommended husband be found in contempt and sentenced to 30 days in jail, but also recommended the jail sentence be suspended and husband be given an opportunity to purge the contempt by paying the debt. The magistrate memorialized its Findings of Fact and Conclusions of Law, and Recommendations via Magistrate's Decision filed November 1, 1999. Husband filed objections to the Decision on November 9, 1999. Via Judgment Entry filed December 14, 1999, the trial court found husband's objections not well taken, and approved and adopted the Magistrate's Decision. The trial court further ordered the Recommendations contained the Magistrate's Decision be adopted as the trial court's orders. It is from this judgment entry husband appeals, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN RULING THAT THE APPELLEE PRESENTED SUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT HE APPELLANT KNOWINGLY FAILED TO PAY A MARITAL DEBT.
 II. THE TRIAL COURT ERRED IN RULING THAT THE MARITAL DEBT WAS "REAFFIRMED" BY THE APPELLANT AND WAS NOT DISCHARGED BY THE APPELLANT IN A BANKRUPTCY ACTION.
 I, II
Because husband's first and second assignment of error are interrelated, we shall address said assignments together. In his first assignment of error, husband maintains the trial court erred in ruling wife proved beyond a reasonable doubt husband knowingly failed to pay a marital debt. In his second assignment of error, husband contends the trial court erred in ruling husband reaffirmed the marital debt and had not discharged said debt in the bankruptcy proceedings. As of the date of the final merits hearing on February 4, 1998, the parties were well aware all of husband's financial obligations, including the American General Finance debt, had been discharged in a Chapter 7 bankruptcy proceeding on April 1, 1997. At the final merits hearing, counsel for wife stated: as to American General Finance, you might recall in our discussions, * * * there was a debt that was [the] only * * * creditor that was contacting my client. About a year ago, I talked to them and they indicated that they would send me, if they could find it, the, where she had signed on that Note and was responsible. We never received any contact from them. So, we don't anticipate that that will be a problem. But, if in the future that did arise, it is our understanding that [husband] would be responsible for that debt.
Transcript of February 4, 1998 Hearing at 7.
Attorney Watson did not respond to this statement. As husband had been discharged in bankruptcy over one year prior to the final merits hearing, the parties were aware he did not have a legal obligation to pay the American General Finance debt unless he agreed to do so. By failing to object or otherwise comment upon wife's counsel's statement, we find husband agreed to accept responsibility for said debt. After wife filed objections to the Magistrate's April 18, 1998 Decision, the trial court conducted an evidentiary hearing on the same. Wife and her counsel as well as Attorney Watson appeared and reached an agreement incorporating wife's objections, including the provision setting forth husband's responsibility for the American General Finance debt. The trial court filed an Agreed Entry on May 28, 1998. Husband maintains he did not receive a copy of wife's objections, notice of the hearing on said objections, or a copy of the May 28, 1998 Agreed Entry. However, at the hearing on wife's motion for contempt, Attorney Watson testified to the contrary. The following dialogue occurred between wife's counsel and Attorney Watson: Q. [Attorney Scott Mastin, wife's counsel]: And if I could refer you, sir, to the transcript [of the February 4, 1998 hearing], pages five and six of the actual Court transcript wherein the idea of debts were [sic] discussed. At page five, was it brought up that [husband], your client, had gone through a bankruptcy approximately one year prior to being in Court that day?
A. [Attorney Tom Watson]: That's correct.
Q. Okay. And as I understand it, [husband] indicated or you indicated for him that most of those debts had been discharged on his behalf. Is that correct?
A. That's correct.
Q. And then at page, at the following page, it appears the Ms. Buckley [wife's then counsel] brings up the idea that possibly American General might still be a problem because that might still be in [wife's] name also. Is that correct, sir?
A. That's correct.
* * *
A. Actually, I think, I think the transcript addresses the issue on page seven where Ms. Buckley reads into the record that the American General Finance debt was discharged by [husband] but about a year ago, they had contacted, Ms. Buckley had contacted American General and they indicated to her that they would send a copy of the Note to her where [wife] had signed. They never received any further contact from American General but they don't anticipate, they don't anticipate any problem in the future but if in the future, if that did arise, it was their understanding [husband] would be responsible for that debt.
* * *
Q. And no one objected to that language being read into the record at that point in time?
A. No, it doesn't appear so.
Q. And that indicates that [husband] should take care of it. Is that correct, sir? If it becomes a problem. You didn't think it would be but if it becomes a problem?
A. That's what Ms. Buckley has read into the record, yea.
* * *
Q. And at that point in time, it was agreed to by all counsel, which resulted in that Agreed Entry, that, ah, the Objections filed, one of which deals with American General, would be sustained and placed as a part of the overall agreement in this case and you consented to that either that day, it appears that day, but then later there was a consultation as per phone, it looks like, and someone signed that you would agree. Is that correct, sir?
A. That's correct.
* * *
Q. So, when you came into Court on the 18th day of May and agreed that the Objections would be made a part of the actual Order, in essence, that was also agreeing to American General being [husband's] responsibility?
A. That's correct.
Q. And you had, in fact, discussed that with [husband] prior to that date. Is that correct, sir?
A. That's correct.
Q. And he was aware of that fact? Correct? That he was going to be responsible for that. Is that correct, sir?
A. That's correct.
Transcript of October 20, 1999 Hearing at 33-38.
We find the aforementioned is sufficient to establish husband was aware of his responsibility for the American General Finance debt. We further find husband, by agreeing to accept responsibility for the debt one year after said debt was discharged in bankruptcy, reaffirmed the debt. Based upon the foregoing, we find the trial court did not err in finding wife presented sufficient evidence to establish husband knowingly failed to pay a marital debt. We further find the trial court did not err in finding husband reaffirmed said debt. Accordingly, husband's first and second assignments of error are overruled.
The judgment entry of the Tuscarawas County Court of Common Pleas is affirmed.
 __________________ HOFFMAN, P.J.
By: Hoffman, P.J. Farmer, J. and Edwards, J. concur